UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDISON TORRES-JURADO, (Agency #: 036-568-714)<br><br>                      **Plaintiff**,<br><br>  -against-<br><br>DONALD TRUMP, President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS"); U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT ("ICE"); KEVIN K. MCALEENAN, Acting Secretary of DHS; THOMAS DECKER, New York Field Office Director, CBP, and GERALDO PAOLI, Deportation Officer.<br><br>                      **Defendants.** | Index No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## PRELIMIARY STATEMENT

1. This is an action in which Plaintiff, EDISON TORRES-JURADO seeks damages, a temporary restraining order and injunctive relief for personal injuries sustained as a result of the defendants' violation of his constitutional rights secured by the Fourth Amendment, Fifth Amendment, Eighth Amendment, Equal Protection and Due Process Clauses of the Fourteenth Amendment of the United States Constitution, and for rights secured under the laws and Constitution of the State of New York. Plaintiff was deprived of his constitutional and common law rights when the individual defendants unlawfully and against procedure detained plaintiff, confined plaintiff, and caused the unjustifiable detention and abuse of plaintiff. Plaintiff seeks injunctive and declaratory relief, affirmative and equitable relief, and award of costs and attorney's fees and such other and further relief as this Court deems equitable and just.

**INTRODUCTON**

1. Plaintiff, Edison Torres-Jurado, is a father, husband and business owner. Mr. Torres-Jurodo was first detained by ICE in 2005 while he responded to removal proceedings without bail. At that time, despite residing in New York, ICE transferred him all the way across the country to Louisiana to fight his case from jail, in an unknown location and away from his family. Then, they detained him for an additional ninety (90) days after his removal order was final, in order to secure his travel document, to no avail. He was then released on an order of supervision and granted an "indefinite stay of removal."

2. ICE made no efforts to remove him for twelve years, despite having a valid ten-year passport on file since 2005.

3. On or about November 27, 2017, ICE re-arrested Plaintiff and detained him in the custody of Immigration and Customs Enforcement (hereinafter "ICE") without cause and contrary to ICE's own Order of Supervision permitting him an "indefinite stay of removal" as long as he complies with its requirements and does not violate them; which he had not. (See, Ex. 1—Order of Supervision fully Executed).

4. Since 2017, similarly situated people throughout the United States have been suddenly arrested at routine supervision appointments, without warning, notice, explanation, an opportunity to be heard, or an opportunity to prepare for departure. See https://www.philly.com/philly/news/pennsylvania/Immigrants-fear-routine-check-in-could-speed-deportation--.html; https://www.scalawagmagazine.org/2019/02/ice-deportations/; https://news.vice.com/en_us/article/ywn59y/ice-deportations-immigrant-check-ins. Many of those arrested have been reporting to ICE for over ten

years while simultaneously building equity in the United States and with no negative changes in circumstances.

5. Mr. Torres-Jurado's detention on November 27, 2017 was not authorized by statute and any further detention is not authorized by statute. The post-final order removal statute and associated regulations provide for a removal period, or, in the alternative, supervised release and work authorization. The statue and regulations do not provide for re-detention without cause, notice, and an opportunity to be heard. Second, detention based on a revocation of his order of supervision and/or stay of removal in order to effectuate a removal order is not authorized by law. Finally, Mr. Torres-Jurado's detention violates the Code of Federal Regulations and the Constitution because the post-order custody review process is procedurally inconsistent with his constitutional rights.

6. For any and all of these reasons, this honorable Court should grant Mr. Torres-Jurado's petition for injunctive relief as a result of his unconstitutional detention and/or revocation of his indefinite stay of removal without proper process.

## JURISDICTION

7. Plaintiff has consistently been reporting for twelve years to ICE at 26 Federal Plaza in Manhattan, New York who maintains control over his detention and removal file. On November 27, 2017 Plaintiff was physically present in Defendants' custody at 26 Federal Plaza in Manhattan when he was detained while checking-in with ICE at 26 Federal Plaza and continues to report to that location. Plaintiff is also a resident of New York City.

8. This Court has subject matter jurisdiction over this Petition pursuant to 28 U.S.C. §2241, 28 U.S.C. §1331, and Article I, §9, cl. 2 of the United States Constitution; the All Writs Act, 28 U.S.C. §1651; the Administrative Procedure Act, 5 U.S.C. §701; and for injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201.

## VENUE

9. The Southern District of New York is the proper venue to resolve Mr. Torres-Jurado's complaint and request for injunctive relief. Mr. Torres-Jurado is a resident of New York City and was apprehended in Manhattan. Mr. Torres-Jurado was detained under the authority of Defendant Thomas Decker whom has the official address of the ICE Field Office at 26 Federal Plaza, New York, New York, within the Southern District. Officer Paoli declared ICE intentions to detain Mr. Torres-Jurado upon the dissolution of his Third Circuit stay of removal and he is supervised by Thomas Decker. All of the substantial events relevant to the present case and the constitutional violations against Plaintiff, occurred within the District including Mr. Torres-Jurado's unlawful detention while at 26 Federal Plaza, New York, New York 10278.

10. Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493-500 (1973), venue lies in the United States District Court for the Southern District of New York, the judicial district where defendants reside and a substantial part of the events or omissions giving rise to the claim occurred and is within the jurisdiction of this court. An actual and justiciable controversy exists between the parties under 28 USC §2201, and this Court has authority to grant declaratory and injunctive relief. *Id.* §§1351,v 2201.

## PARTIES

11. Plaintiff Torres-Jurado is a native of Ecuador who was admitted to the United States as a Lawful Permanent Resident on or about November 26, 1979, when he was 12 years old. He was ordered removed in 2005 and was granted an indefinite stay of removal by ICE. In reliance on that and with legal work authorization, he has continued to raise his family here and purchased a franchise that he currently owns and operates. ICE apprehended Plaintiff while he was attending his routine, scheduled check-in, in

accordance with the July 20, 2005 Order of Supervision.  He is under threat of re-arrest since his recent stay of removal issued by the Third Circuit was dissolved on April 9, 2019 and his next scheduling reporting date is May 13, 2019, at which time, ICE has declared he will be re-detained.

12. Defendant Donald Trump is the President of the United States and responsible for his Executive Action of January 2017 that has sparked the increase in arrests and unlawful detention.

13. Defendant William Barr is named in his official capacity as the Attorney General of the United States.  In this capacity, he is responsible for the administration of the immigration laws and routinely transacts business in the Southern District of New York, is legally responsible for administering Plaintiff's removal proceedings and the standards use in those proceedings, and as such is the legal custodian of Plaintiff.

14. Defendant Kevin K. McAleenan is named in his official capacity as the Acting Secretary of the Department of Homeland Security. He is responsible for the implementation and enforcement of the Immigration and Nationality Act (INA) and oversees U.S. Immigration and Customs Enforcement (ICE). In this position Kevin K. McAleenan routinely transacts business in the Southern District of New York, and as such, has legal authority and legal responsibility over Plaintiff.

15. Defendant Thomas Decker is the Field Office Director of the New York Field Office directing Enforcement and Removal Operations in the district that oversees Plaintiff's file.  As such, Defendant Thomas Decker is charged with the responsibility of determining whether Mr. Torres-Jurado will be detained and under what authority. Defendant Department of Homeland Security (DHS) is the federal agency responsible for enforcing Plaintiff's continued detention.

16. Defendant Geraldo Paoli is the Deportation Officer assigned to oversee Mr. Torres-Jurado's supervision, detention and deportation.

## **FACTUAL ALLEGATIONS**

17. Plaintiff Torres-Jurado is a native of Ecuador who was admitted to the United States as a Lawful Permanent Resident on or about November 26, 1979, when he was 12 years old. His mother is a US citizen and so are his six siblings.

18. Mr. Torres-Jurado has a 26-year-old, US citizen son, Edward, who he maintains a close relationship with. He married his wife, Roseanna, a US citizen, in 2000 and they had a son, Eric Torres in 2001. Plaintiff remains happily married to his wife and dedicated to his sons' growth. He worked his way up from a delivery person for the New York Daily News to a franchise route owner. He works hard to support his family and they are unable to survive without him. His wife just returned to school to study as a dental hygienist and will graduate and take her boards in June. His youngest son, Eric, is graduating private school in June as well. Plaintiff's family has been suffering financially and emotionally since his surprise and unexplained arrest. He is integral to his family and community and he is admired and respected by many. (See, Ex. 6—Letters from Family).

19. Plaintiff's contact with DHS began on or about July 29, 2002, when Plaintiff was apprehended by ICE crossing the Canadian-United States border with an undocumented individual. Plaintiff was released on bail after a few days of detention.

20. As evidenced by the attached Cooperation and Plea Agreement and Pre-Sentence Investigation Report (PSIR) relating to the case, Plaintiff Torres-Jurado accepted full and complete responsibility for his actions, and thereafter cooperated extensively with the prosecution in his criminal case. (See, Ex. 2—Cooperation Agreement and PSIR).

21. On September 15, 2003, a Judgment was entered on Plaintiff Torres-Jurado's criminal matter bearing Case No.: 02-CR-343 (TJM) with a plea of guilty to a one (1) count information on the offense of 'Alien Smuggling' in violation of 8 U.S.C. §1342(a)(1)(A)(iv) and (B)(i); Plaintiff received a sentence of five (5) years probation. (See, Ex. 3—Judgment in the Criminal Case).

22. Plaintiff reported consistently to probation. Around February 2005, after having been out of custody for almost three years, ICE took him into custody at the probation office and placed him in removal proceedings without bond in Louisiana, despite the fact that he and his family resided in New York.

23. As a result of his guilty plea, he was subsequently ordered removed to Ecuador by an Immigration Judge in Oakdale, LA on or about April 19, 2005. Mr. Torres-Jurado never appealed his order of removal or moved to reopen his case.

24. On or about April 21, 2005, ICE informed Plaintiff they would conduct a file custody review on or about June 19, 2005. Plaintiff fully cooperated as required with attempts to secure a travel document while detained as evidenced by his signature upon service of that notice. (See, Ex. 4—ICE documents).

25. On or about July 20, 2005, DHS/ICE notified Plaintiff that he was being released pursuant to *Zadvydas v. Davis* because "due to circumstances beyond [his] control, [his] removal/deportation cannot be effectuated in the reasonably foreseeable future, due to an absence of a formal repatriation agreement between [his] country of citizenship and the United States, or due to the fact that [his] country of citizenship has not or will not issue identity and travel documents necessary for [his] departure." (Ex. 4)

26. ICE released Plaintiff and placed him on an "Order of Supervision" granting Plaintiff an "indefinite stay of removal" that has not been revoked, altered or violated in

any way. (See, Ex. 1—Order of Supervision). This rare grant of an indefinite stay by ICE is evidence of Plaintiff's extensive cooperation with the US government.

27. The Order of Supervision states on page 2 with a checked box, "***[a] stay of removal is granted indefinitely in your case. This stay will expire immediately upon your arrest by any Law Enforcement Agency for violation of ANY law in the United States. The ICE shall retain possession of your passport as long as this stay is in effect.***" (Ex. 1).

28. While released in 2005, in accordance with ICE requirements, Plaintiff Torres-Jurado, voluntarily obtained and deposited his Ecuadorian passport with ICE. Plaintiff has since complied with all provisions and requirements of the Order of Supervision and has been checking-in with ICE as scheduled; never missing a single appointment in over twelve (12) years. (See, Ex. 11—Affidavit of Roseanna Torres).

29. In 2013, Deportation Officer James Bratton at the ICE NY Field Office confirmed Plaintiff had been reporting since 2005 and "cannot be removed to Ecuador." (See, Ex. 5—ICE Letter dated August 12, 2013).

30. Suddenly and without warning, justification or any change in circumstances on or about November 27, 2017 ICE took Plaintiff into custody during a routine supervision appointment.

31. Mr. Torres-Jurado's entire life was disrupted, his wife and child were left in despair and constant fear of forever losing him and his business began to suffer when ICE re-detained him without cause or warning at his supervision appointment on November 27, 2017. (See, Ex. 6– Letter from Mrs. Torres and Psych Evaluation; See also, Ex. 7— Letters from Family).

32. ICE then continued his detention for seven months despite the fact that the Ecuadorian Consulate refused to issue a travel document within his first two months of

detention. (See Ex. 8–Declaration of Officer Paoli; See also, Ex. 9–Letter from Ecuadorian Consulate). They went so far as to transfer Mr. Torres-Jurado across the country to Louisiana while his habeas corpus petition was pending in New Jersey.

33. Additionally, during his seven months of detention plaintiff was transported to Louisiana and subjected to cruel and inhuman treatment, including freezing conditions, lack of food, and repeated intimidation to convince him to sign a consent to voluntarily leave the country. Despite these tactics he did not sign and was returned to Bergen County after motion practice.

34. On July 12, 2018, Mr. Torres-Jurado was released by order of the District Court of New Jersey pursuant to a habeas petition.

35. As provided in Officer Paoli's second declaration, ICE will re-detain him at his next scheduled reporting date or any interim date once the stay is lifted. (See Ex. 10-Updated Declaration of Officer Paoli). His next reporting date is May 13, 2019.

36. At all times, Plaintiff was granted an indefinite stay and has relied upon that stay in conducting his life and building substantial equity in the United States. He has not violated the Order of Supervision.

37. Plaintiff has been a model, law-abiding resident of the United States since the inception of the Order of Supervision, giving ICE absolutely no reason to believe there has been a violation of the Order of Supervision or to consider him a flight risk or danger to the community, let alone to uncermoniously breach their own Order of Supervision and detain and imprison Mr. Torres-Jurado in violation of the "indefinite Stay of Removal" granted to him and never properly revoked.

38. Mr. Torres-Jurado faces imminent re-arrest as evidenced by ICE's representation that their agents have been made aware that the stay has been lifted. (Ex. 10).

## **CLAIMS FOR RELIEF**

## **FIRST CAUSE OF ACTION**

### **There is No Statutory Authority to Detain Plaintiff**

39. Plaintiff realleges and incorporates by reference paragraphs 1-38.

40. Defendants did not provide any notice or custody determination to Plaintiff regarding his sudden and unwarranted arrest on November 27, 2017.

41. ICE claimed he was being detained under 8 USC § 1231(a). This statute delineates a "removal period" of 90 days beginning on the date the removal order is final. Petitioner's order was final on April 19, 2005. 8 USC § 1231(a) mandates detention for a specified removal period of 90 days only, in which time the government *must* secure the individual's removal. If the person is not removed from the United States within the 90-day removal period, the statute provides for release subject to an order of supervision.

42. The statute provides that the government *may* detain certain individuals beyond the 90-day period or release him on an order of supervision. Here, the government chose to release Plaintiff. Not only did they determine he did not warrant further detention, they issued an indefinite stay of his removal.

43. Thus, the removal period has expired and the statute does not apply to Plaintiff. No statute would authorize his detention at this time, without cause, prior notice and an opportunity to be heard.

## **SECOND CAUSE OF ACTION**

### **ICE Violated it's Own Regulations and Any Revocation of ICE's Order of Supervision and/or Indefinite Stay of Removal is Invalid and a Violation of Plaintiff's Constitutional Rights**

44. Plaintiff realleges and incorporates by reference paragraphs 1-43.

45. Mr. Torres-Jurado's release on an order of supervision in 2005 was authorized by Statute. *See* 8 USC § 1231(a)(6). He has not violated any conditions of his order of supervision.

46. ICE, has violated its own regulations by taking Mr. Torres-Jurado into custody despite conducting a custody review under 8 CFR § 241.13 and determining that there is no significant likelihood of removal in the foreseeable future.

47. 8 CFR § 241.4 (g)(1) provides, "unless there are special circumstances justifying continued detention, the Service shall promptly make arrangements for the release of the alien subject to appropriate conditions." Here, ICE was required to release Mr. Torres-Jurado once they made that determination and did not find any special circumstances justifying detention.

48. Moreover, 8 CFR § 241.4(b)(4) "The custody review procedures in this section do not apply *after the Service has made a determination,* pursuant to the procedures provided in 8 CFR § 241.13, that there is no significant likelihood that an alien under a final order of removal can be removed in the reasonably foreseeable future. However, if the *Service* subsequently determines, *because of a change of circumstances,* that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future to the country to which the alien was ordered removed or to a third country, the alien shall again be subject to the custody review procedures under this section. (Emphasis added).

49. Statute specifically states that an individual will only be subject to the custody review procedures if there is a change in circumstances and such revocation must be referred to the Executive Associate Commissioner. As the Ecuadorian consulate has not changed its position, there has been no change in circumstances. In fact, the circumstances remain exactly the same as they have for the past 12 years.

50. To the extent the government has revoked Mr. Torres-Jurado's order of supervision and/or indefinite stay of removal without notice or an opportunity to be heard, the government has violated the aforementioned statutes and applicable regulations and Constitution by failing to provide Mr. Torres-Jurado with a particularized reason for the revocation and detention or an opportunity to respond.

51. As held by the Honorable Katherine Forrest on January 29, 2018 in a similarly situated case in the Southern District of New York, "when this country allowed Plaintiff to become a part of our community fabric, allowed him to build a life with and among us and to enjoy the liberties and freedom that come with that, it committed itself to allowance of an orderly departure when the time came, and it committed itself to avoidance of unnecessary cruelty when the time came. By denying Plaintiff these rights, the Government has acted wrongly." (See, Ex. 12—Decision *Ragbir v. Sessions*).

52. The Due Process Clause of the Fifth and 14th Amendment requires that the deprivation of Plaintiff's liberty interest be narrowly tailored to serve a compelling government interest. Any interest Defendants have in removing Plaintiff does not justify the detention of Plaintiff.

53. Mr. Torres-Jurado's order of supervision and *indefinite stay* of removal created legitimate, vested liberty and property interests that he relied upon.

54. The Fourth Amendment also requires probable cause for an arrest and detention, which does not exist under the present fact pattern as there has been no violation of the Order of Supervision.

## THIRD CAUSE OF ACTION
**Plaintiff's Detention is Violation of the Due Process Clause of the 5th and 14th Amendments and Cruel and Unusual Punishment Clause of the 8th Amendment**

55. Plaintiff realleges and incorporates by reference paragraphs 1-54.

56. Under the Due Process Clause of the Fifth and 14th Amendment, an alien is entitled to a timely and meaningful opportunity to demonstrate that he should not be detained. Plaintiff in this case has been denied that opportunity. DHS does not make decisions concerning aliens' custody status in a neutral and impartial manner. The failure of Defendants to provide a neutral decision maker to review the continued custody of Plaintiff violates Plaintiff's right to procedural due process.

Under the 8th Amendment, an individual is entitled to be free from cruel and unusual punishment. As stated above, the government defendants have detained plaintiff without warning for seven months. During that time, he suffered separation from his family and business, he passed out from a spike in his blood pressure, he lost approximately forty pounds and was subjected to cruel conditions including lack of sleep, lack of food and extreme cold. As detention becomes prolonged, the constitution requires a sufficiently strong justification to outweigh the significant deprivation of liberty, as well as procedural protections. *Zadvydas*, 533 U.S. at 690-91; *Diop v. ICE*, 656 F.3d 221, 231 (3d Cir. 2011). Petitioner suffered the mental anguish of being abruptly removed from his life, not knowing what would become of himself, his life that he built, his family and his business. Conjunctively and foreseeably his family suffered extreme financial and emotional loss due to the abrupt separation of the head of their household.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1. Grant Plaintiff an Emergency Stay of Removal while this Court determines the remaining forms of relief

2. Enjoin Defendants from revoking Mr. Torres-Jurado's existing "indefinite stay of removal" absent adequate statutory and constitutional due process;

3. Enjoin Defendants from using custodial measures in effectuating removal in the event that removal is effectuated; and

4. Direct Defendants to allow Mr. Torres-Jurado adequate time and opportunity, given his circumstances, to arrange a humane and orderly departure from the United States in the event his indefinite stay is adequately revoked,

5. Award Plaintiff attorney's fees and costs under the Equal Access to Justice Act (EAJA), as amended, 5 U.S.C. § 504 and 28 U.S.C. § 2412, and on any other basis justified under law; and

6. Grant any other and further relief as the Court deems just and proper.

Dated: New York, New York
April 22, 2019

_____
By: Robert Rambadadt, Esq.
Rosa Barreca, Esq.
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2019, I electronically filed the foregoing with the Clerk of the Court for the Southern District of New York by using the Court's CM/ECF system.

I further certify that a copy was forwarded to Defendants via U.S. mail.

_____
Robert Rambadadt, Esq.
Rosa Barreca, Esq.
Attorneys for Plaintiff
20 W. 20th Street—2nd Floor
New York, New York 10011
P: (646) 450-8049
F: (646) 224-9822
Rrambadadt@ramba-law.com

# EXHIBIT LIST

- **Exhibit 1**:   Order of Supervision
- **Exhibit 2**:   Cooperation Agreement & PSIR
- **Exhibit 3**:   Judgment in Criminal Case
- **Exhibit 4**:   ICE Documents
- **Exhibit 5**:   ICE Letter dated August 2013
- **Exhibit 6**:    Letters from Torres and Psych Letter
- **Exhibit 7**:   Letters from Family
- **Exhibit 8**:   Declaration of Officer Paoli
- **Exhibit 9**:   Letter from Ecuadorian Consulate
- **Exhibit 10**:  Updated Declaration of Officer Paoli
- **Exhibit 11**:  Affidavit of Roseanna Torres
- **Exhibit 12**:  Decision Ragbir v. Sessions