```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _10/29/2023_

EDISON TORRES-JURADO,

                Plaintiff,

-against-

JOSEPH BIDEN, President of the United States;
U.S. DEPARTMENT OF HOMELAND
SECURITY ("DHS"); U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT ("ICE");
ALEJANDRO MAYORKAS, Secretary of DHS;
KENNETH GENALO, New York Field Office
Director; and GERARDO PAOLI, Deportation
Officer,

                Defendants.

19 Civ. 3595 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Plaintiff, Edison Torres-Jurado, moves for an emergency stay of removal. A final order of removal was entered against Plaintiff in 2005, but Defendant Immigration and Customs Enforcement ("ICE") released him on an order of supervision dated July 20, 2005, with a stay of removal that, by its terms, was indefinite (the "ICE Stay"). In April 2019, after ICE threatened to enforce the final order of removal, Plaintiff filed the instant action seeking, *inter alia*, to enjoin Defendants from revoking the ICE Stay without adequate process. Compl., ECF No. 1. The Court stayed the action when ICE decided not to pursue removal. ECF No. 8. Four years later, and eighteen years after Plaintiff was granted the ICE Stay, ICE informed Plaintiff and the Court that it will again seek to enforce the final order of removal and will detain him during an October 30, 2023 check-in appointment if he reports without a plan to self-deport. *See* ECF No. 13. Plaintiff now moves for a temporary stay of removal pending the resolution of this action. Pl. Mem., ECF No. 17; *see* Pl. Reply, ECF No. 19. For the reasons stated below, Plaintiff's request is GRANTED.

## BACKGROUND

Plaintiff, Edison Torres-Jurado, is a native and citizen of Ecuador. Compl. ¶ 17. On November 26, 1979, at the age of 12, Plaintiff was admitted to the United States as a lawful permanent resident. Compl. ¶ 17; Pl. Mem. at 6. Plaintiff lives in New York with his wife and son, who are both United States citizens. Compl. ¶ 18; Pl. Mem. at 6.

In 2002, Plaintiff attempted to drive an undocumented individual across the United States-Canada border in exchange for money. Compl. ¶ 19; Pl. Mem. at 6. He was immediately apprehended, cooperated with law enforcement, pleaded guilty to violating 8 U.S.C. § 1342(a)(1)(A)(iv) and (B)(i), and on September 15, 2003, was sentenced to five years' probation. Compl. ¶¶ 20–21; Pl. Mem. at 6–7; *see* ECF Nos. 17-3, 17-4. On April 19, 2005, an immigration judge ordered Plaintiff removed to Ecuador, a decision that he never appealed and that, therefore, resulted in a final order of removal. Compl. ¶ 23; Pl. Mem. at 7. Although Plaintiff was detained in Louisiana during his removal proceedings, ICE released him on July 20, 2005, because it determined that his removal could not "be effectuated in the reasonably foreseeable future" as a result of Ecuador's refusal to "issue identity and travel documents necessary for [his] departure." Compl. ¶ 25 (cleaned up); Pl. Mem. at 7; *see* ECF No. 17-5. Plaintiff signed the July 20, 2005 order of supervision which contained the ICE Stay, stating that a "stay of removal is granted indefinately [sic] in your case". ECF No. 17-2; Compl. ¶¶ 26–27; Pl. Mem. at 7–8. Following his release, Plaintiff has regularly checked in with ICE as required by the ICE Stay. Compl. ¶¶ 28–29; Pl. Mem. at 8; ECF No. 17-6.

On November 27, 2017, ICE detained Plaintiff during a routine check-in appointment and informed him that the ICE Stay was revoked and that it was seeking to remove him (the "2017 Revocation"). Compl. ¶ 30; Pl. Mem. at 8. Through a habeas petition filed in the District of New

Jersey, Plaintiff sought an emergency stay of removal and release from detention. Pl. Mem. at 8; *see* ECF No. 27, *Torres-Jurado v. Saudino*, No. 18 Civ. 2115 (D.N.J. filed May 15, 2018). The district court denied his stay request. Opinion & Order, *Torres-Jurado*, No. 18 Civ. 2115 (D.N.J. May 17, 2018), ECF Nos. 29–30. Plaintiff appealed this interlocutory decision to the Court of Appeals for the Third Circuit, which issued a temporary stay pending appeal. *Torres-Jurado v. Adm'r of Bergen Cnty. Jail*, No. 18-2116, Doc. No. 003112934093 (3d Cir. May 17, 2018). The district court separately ordered his release from detention, finding that, because Ecuador continued to refuse to issue travel documentation, Plaintiff's removal was not reasonably foreseeable. Opinion at 7–8, *Torres-Jurado*, No. 18 Civ. 2115 (D.N.J. July 12, 2018), ECF No. 34. Since his release, Plaintiff has continued to check in with ICE. Pl. Mem. at 12.

On April 9, 2019, the Third Circuit dismissed Plaintiff's appeal as moot, and his temporary stay of removal expired. *Torres-Jurado v. Adm'r of Bergen Cnty. Jail*, 767 F. App'x 227 (3d Cir. 2019). Because ICE had previously informed Plaintiff that it would seek to remove him and detain him if the Circuit's stay pending appeal were lifted, *see* ECF No. 17-11 at ¶ 6, on April 23, 2019, Plaintiff filed the instant action, claiming that ICE's revocation of the ICE Stay violated the Due Process Clause and that any detention would violate the Constitution and the agency's own regulations. *See generally* Compl. By letter dated April 24, 2019, the Government stated that ICE had withdrawn its plan to detain and remove Plaintiff. ECF No. 7. The Court stayed this action and ordered the Government to inform it "[w]ithin three days of when ICE determines how it will proceed with respect to Plaintiff's removal." ECF No. 8.

By letter dated October 3, 2023, the Government advised the Court that it intended to remove Plaintiff and had directed him to report to his October 10, 2023 check-in appointment with a plan to self-deport or face detention. ECF No. 13. The appointment was rescheduled to October 30, 2023.

3

ECF No. 15.  On October 17, 2023, Plaintiff filed his motion for an emergency stay pending resolution of this action, and the parties[1] completed briefing on October 26, 2023.

## DISCUSSION

### I.     Jurisdiction

Defendants first argue that 8 U.S.C. § 1252(g) deprives the Court of jurisdiction over Plaintiff's request for an emergency stay pending resolution of this action.  *See* Def. Opp. at 11–15, ECF No. 18.  Section 1252(g) strips jurisdiction from all courts over any claim "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen] under this chapter."  The Supreme Court has cautioned against reading this provision with "uncritical literalism."  *Jennings v. Rodriguez*, 138 S. Ct. 830, 840 (2016) (citation omitted).  The section does not "sweep in any claim that can technically be said to 'arise from' the three listed actions" but instead "refer[s] to just those three specific actions themselves."  *Id.* at 841 (citation omitted).  The purpose of the provision was to curb "attempts to impose judicial constraints upon prosecutorial discretion."  *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 n.9 (1999).

Courts in this district, however, have held that Section 1252(g) does not bar challenges to ICE's legal authority over a removal order.  *See S.N.C. v. Sessions*, No. 18 Civ. 7680, 2018 WL 6175902, at *5 (S.D.N.Y. Nov. 26, 2018); *Calderon v. Sessions*, 330 F. Supp. 3d 944, 954–55 (S.D.N.Y. 2018); *You v. Nielsen*, 321 F. Supp. 3d 451, 457–58 (S.D.N.Y. 2018).  Defendants cannot remove Plaintiff in any manner they please.  *See Ragbir v. Sessions*, No. 18 Civ. 236, 2018 WL 623557, at *2 (S.D.N.Y. Jan. 29, 2018) (permitting a challenge to the "manner in which deportation

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), President Joseph R. Biden, Secretary Alejandro Mayorkas, and ICE New York Field Office Director Kenneth Genalo are automatically substituted in place of defendants Donald Trump, Kevin McAleenan, and Thomas Decker.  *See* ECF No. 13 at 1 n.1.

was and is to be effected"), *vacated on other grounds by Ragbir v. Barr*, 2019 WL 6826008 (2d Cir. July 30, 2019). For example, Defendants are barred from indefinitely detaining Plaintiff in order to execute his final order of removal. *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001). Courts can review "how" Defendants exercise their discretion because such a claim does not ask "why the Secretary chose to execute the removal order" but rather "whether the way [Defendants] acted accords with the Constitution and the laws of this country." *You*, 321 F. Supp. 3d at 457. "While the first question challenges ICE's discretion to execute a removal order, the second question asks whether the Constitution or other law deprives ICE of power over the removal order." *S.N.C.*, 2018 WL 6175902, at *5; *see Fatty v. Nielsen*, No. 17 Civ. 1535, 2018 WL 3491278, at *2 (W.D. Wash. July 20, 2018) (permitting Plaintiff's "collateral legal and constitutional challenges" to the removal process).

Plaintiff's request raises the second question: whether the Constitution bars ICE from executing the removal order at this time. Plaintiff claims that, in violation of the Fifth Amendment's guarantee of due process, ICE revoked the ICE Stay without providing notice or an opportunity to be heard. Pl. Mem. at 19. Plaintiff does not challenge the validity of his final removal order or ICE's discretion to execute the removal order. *Id*. Plaintiff's action, therefore, does not dispute "the wisdom of ICE's decision to remove" him, but challenges ICE's legal authority to revoke the ICE Stay without process. *S.N.C.*, 2018 WL 6175902, at *5 (cleaned up). Accordingly, his request is not barred by § 1252(g).

Defendants' contention that 8 U.S.C. § 1252(b)(9) strips the Court of jurisdiction fails for substantially the same reasons. *See* Def. Opp. at 15. Under § 1252(b)(9), "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove [a noncitizen] from the United States . . . shall be available only in judicial review of a final order." But, courts should not

"cram judicial review" of collateral claims, such as inhumane conditions of confinement, into the review of final removal orders. *Jennings*, 138 S. Ct. at 840. To require Plaintiff to raise his claims only in the context of a petition for review would render his claim "effectively unreviewable." *Id.* Because Plaintiff's right to file a petition for review of his 2005 order of removal has long since expired, Defendants' reading of § 1252(b)(9) would permit ICE to arrest, detain, and remove Plaintiff without any statutory or constitutional constraints. This is the precise result that the Supreme Court sought to avoid in *Jennings*. *See id.* at 840–41. Accordingly, the Court shall not bar Plaintiff's collateral challenge.

## II. Merits

The Court now analyzes Plaintiff's application for a temporary stay of removal pending the resolution of this action. The Court applies the "traditional" test for stays in cases involving the Government. *Nken v. Holder*, 556 U.S. 418, 426 (2009); *see S.N.C. v. Sessions*, 325 F. Supp. 3d 401, 411 (S.D.N.Y. 2018); *You*, 321 F. Supp. 3d at 461. Under this test, courts must consider "(1) whether the applicant has shown a likelihood of success on the merits, (2) whether the applicant will be irreparably injured absent a stay, (3) whether issuance of a stay will substantially injure the other parties interested in the proceeding, and (4) where the public interest lies." *Kabenga v. Holder*, 76 F. Supp. 3d 480, 482 (S.D.N.Y. 2015). "Of these factors, the first two are the most critical." *Id.* (citation omitted). And the final two factors "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435.

### A. Likelihood of Success on the Merits

Plaintiff is likely to succeed on his claim that Defendants' actions violated due process. Defendants granted Plaintiff the ICE Stay in 2005, eighteen years ago. ECF No. 17-2. The October 3, 2023 letter, which notified Plaintiff that the Government sought to detain and deport him, in effect

6

nullified the ICE Stay without first giving Plaintiff an opportunity to contest the decision. Although Defendants were under no obligation to grant the ICE Stay in the first place, their decision to do so triggered obligations that they cannot now ignore.

"A procedural due process violation is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012) (citation omitted). Plaintiff argues that he has a liberty interest in the ICE Stay. Under the facts presented, the Court agrees. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Fifth Amendment's Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. Revocation of the ICE Stay and subsequent removal from the country would likely require the use of physical restraint, and the Government has already indicated that it would seek to detain Plaintiff if he arrived without a plan to self-deport. *See* ECF No. 13 at 1–2. Plaintiff's liberty interest is limited by the fact that he is subject to a final order of removal and, accordingly, does not have the right to remain indefinitely in the United States. But Plaintiff's liberty interest is not de minimis. The ICE Stay has been in place for eighteen years, a significant period of time that has allowed Plaintiff to sustain the deep community ties that he has built over the course of nearly fifty years in the United States. *Cf. Landon v. Plasencia*, 459 U.S. 21, 32 (1982) (holding that a noncitizen's "constitutional status changes" with the development of "ties" to the United States). Indeed, the ICE Stay has no end date or requirement for renewal. ECF No. 17-2 at 4. It states a specific trigger for revocation: "arrest by any Law Enforcment [sic] Agency for violation of ANY law in the United States."[2] *Id.* It sets forth that ICE would keep Plaintiff's passport during the ICE Stay's

---

[2] Defendants state that Plaintiff was arrested in August 2019 and did not notify ICE. Def. Opp. at 7. Plaintiff insists that he did notify ICE. Pl. Reply at 3–4. The dispute is immaterial because Defendants did not seek to nullify the ICE Stay on this basis. *See id.* at 4; ECF No. 18-1 at ¶ 30 (noting that ICE has been aware of this since-dismissed arrest since August 2019 and took no action for four years).

.

*Ashcroft*, 317 F. Supp. 2d 398, 403 (S.D.N.Y. 2004). The opportunity must be meaningful. *Id.* (citation omitted). On October 2, 2023, the Government informed the Court of its determination that if Plaintiff did not come to his next check-in appointment with a plan to self-deport, he would be detained and removed. ECF No. 13 at 1–2. At no point did Defendants inform Plaintiff that the ICE Stay had been annulled; indeed, Defendants' position is that the ICE Stay was not in effect at all. Moreover, Defendants neither provided Plaintiff with an explanation why the ICE Stay had been annulled nor an opportunity to provide any facts relevant to their decision to revoke the ICE Stay.

Plaintiff's liberty interest in the ICE Stay is limited. Defendants undoubtedly have the authority to revoke the ICE Stay.[3] The Court does not—and cannot—hold that Plaintiff will be allowed to remain in the United States indefinitely. *Cf. Ragbir*, 2018 WL 623557, at *2. Any such applications are appropriately directed to the immigration authorities. *See S.N.C.*, 325 F. Supp. 3d at 407. Due process, moreover, is flexible. *Francis v. Fiacco*, 942 F.3d 126, 142–43 (2d Cir. 2019). Given the limited nature of Plaintiff's liberty interest, Defendants do not have to provide a full-blown adversarial hearing. *See Mathews v. Eldridge*, 424 U.S. 319, 333–35 (1976) (requiring a balance between the private interest, governmental interest, and the risk of erroneous deprivation posed by the procedures to determine their constitutional adequacy).

But due process requires that "we have dealt fairly when we are depriving a person of the most essential aspects of life, liberty and family." *Ragbir*, 2018 WL 623557, at *2. "[B]efore the Government unilaterally takes away that which is sacred, it must provide *meaningful process*." *Rodriguez-Figueroa v. Barr*, 442 F. Supp. 3d 549, 564 (W.D.N.Y. 2020) (cleaned up and emphasis in original). As the Supreme Court instructed in the context of the Administrative Procedure Act, when an agency changes course, it must be "cognizant that longstanding policies may have engendered

---

[3] To hold otherwise would directly conflict with the jurisdictional bar in § 1252(g) and frustrate ICE's authority to execute a final removal order.

9

serious reliance interests that must be taken into account," and "[it] would be arbitrary and capricious to ignore such matters." *Dep't of Homeland Sec. v. Regents of the Univ. of Calif.*, 140 S. Ct. 1891, 1913 (2020) (cleaned up).  Although procedural requirements can seem like a mere formality, they promote "agency accountability" and ensure that the parties—and where relevant, the public—can respond fully and in a timely manner to an agency's exercise of authority.  *Regents*, 140 S. Ct. at 1909.  Defendants cannot decide to revoke the ICE Stay without affording Plaintiff "an opportunity to be heard in a meaningful time and in a meaningful manner."  *Rodriguez-Figueroa*, 442 F. Supp. 3d at 564 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  This includes, at minimum, the opportunity for Plaintiff to submit evidence relevant to whether Defendants should revoke the ICE Stay before they make a revocation decision.  *Cf. Mathews*, 424 U.S. at 346–47.  Defendants' cursory, abrupt, and predetermined notice that Plaintiff must self-deport within one month after permitting him to live in the United States pursuant to the ICE Stay for eighteen years fails to satisfy this fundamental constitutional right.

Accordingly, Plaintiff's claim that Defendants' revocation of the ICE Stay violated procedural due process is likely to succeed on the merits.

### B.  Irreparable Harm

Plaintiff has shown irreparable harm absent the entry of a stay.  "In the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm."  *Basank v. Decker*, 613 F. Supp. 3d 776, 788 (S.D.N.Y. 2020) (collecting cases); *accord Statharos v. N.Y.C. Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999).  Moreover, courts in this Circuit have held that "the deprivation of [a noncitizen's] liberty is, in and of itself, irreparable harm."  *Sajous v. Decker*, No. 18 Civ. 2447, 2018 WL 2357266, at *12 (S.D.N.Y. May 23, 2018).  Because Plaintiff alleges a

due-process violation, and ICE has indicated that it intends to detain him on October 30, 2023, Plaintiff has shown irreparable harm absent a stay of removal.

### C. Balance of Equities and Public Interest

The balance of equities and the public interest also weigh in Plaintiff's favor. As stated, the final two factors merge when the Government is the opposing party. *Nken*, 556 U.S. at 435. When "a plaintiff alleges constitutional violations, the balance of hardships tips decidedly in the plaintiff's favor despite arguments that granting a preliminary injunction would cause financial or administrative burdens on the Government." *Sajous*, 2018 WL 2357266, at *13 (citing *Mitchell v. Cuomo*, 748 F.2d 804, 808 (2d Cir. 1984)). Plaintiff alleges a constitutional violation. He also points to the significant financial and emotional burden posed to his family by his abrupt removal. *See* Pl. Mem. at 24. Further, there is a public interest in maintaining families together and in avoiding extreme hardship to Plaintiff's citizen wife and child. *You*, 321 F. Supp. 3d at 469.

By contrast, the potential harm to Defendants is limited. Defendants argue that Plaintiff's request will result in "delay and fragmentation of the enforcement of the immigration laws." Def. Opp. at 25 (citation omitted). But it is Defendants' own actions, in granting the ICE Stay, that have occasioned the delay here. The brief delay caused by a temporary stay here does not interfere with the public interest when Plaintiff has been allowed to live in the United States for eighteen years without Defendants executing the final removal order. *See You*, 321 F. Supp. 3d at 468–69. The instant stay, moreover, does not frustrate the execution of the removal order itself but ensures that ICE has properly complied with the laws and the Constitution in seeking to remove Plaintiff despite the ICE Stay. *Sajous*, 2018 WL 2357266, at *13 ("The public interest is best served by ensuring the constitutional rights of persons within the United States are upheld."); *see Mitchell*, 748 F.2d at 808.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a stay of removal pending the resolution of this action is GRANTED, and Defendants are prohibited from removing Plaintiff without first affording Plaintiff a constitutionally adequate opportunity to respond to the ICE Stay annulment. Defendants may move the Court to lift the stay upon a showing that they have complied with this order.

By **November 30, 2023**, Defendants shall answer or otherwise respond to the complaint.

SO ORDERED.

Dated: October 29, 2023
       New York, New York

_____
ANALISA TORRES
United States District Judge